UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TADEUSZ LATYNSKI-ROSSITER *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No.:   11-2286 (RC) |
| | : | |
| v. | : | Re Documents No.:  9, 13 |
| | : | |
| DISTRICT OF COLUMBIA, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

Tadeusz Latynski-Rossiter is a nineteen-year-old student who suffers from learning disabilities. To address his needs, his parents placed him in a private school in Maryland. They seek reimbursement for his tuition under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. During administrative proceedings below, the hearing officer concluded that the parents lacked standing because their child is an adult. The parents brought this suit to challenge the hearing officer's decision. For the reasons explained below, the court will grant the plaintiffs' motion for summary judgment, deny the District's cross-motion for summary judgment and remand this matter back to the hearing officer for further proceedings.

**II. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND**

Tadeusz[1] Latynski-Rossiter ("Tadzio") is the adult child of Maya Latynski and Caleb Rossiter. All three are plaintiffs in this action, in which they allege that the District of Columbia denied Tadzio a free appropriate public education, a right that is guaranteed by the IDEA.

---

[1]  The plaintiffs' attorneys inadvertently misspelled the child's name in their initial filings. *See* Docket No. 8. The correct spelling is used here. In addition, the local rules would normally require that the child be referred to by his initials. *See* LCvR 5.4(f)(2). Because the child is an adult, the court will use his full name.

Tadzio suffers from several learning disabilities, and he attended a private school in Maryland to address his unique needs for the 2008-2009 school year. AR 191. Although the District recommended that he be relocated, his parents wished to keep him enrolled in private school from 2010 to 2012. Pl.'s Mot. at 5. Tadzio's parents decided to challenge the District's proposal, keep Tadzio enrolled in private school, and seek reimbursement for his tuition fees. Accordingly, they filed an administrative complaint and requested a due process hearing. AR 189–98. In the administrative proceedings below, the District filed a motion to dismiss, arguing that Tadzio was an adult and that the parents lacked standing. AR 235–36. The hearing officer granted the District's motion, AR 3–5, and the plaintiffs brought this action to challenge the dismissal. Now before the court are the parties' cross-motions for summary judgment. Because the court finds that Tadzio's parents have standing to sue, it grants the plaintiffs' motion for summary judgment and denies the District's cross-motion for summary judgment.

### III. ANALYSIS

**A. Legal Standard on a Motion for Summary Judgment under the IDEA**

Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." *Henry v. District of Columbia*, 750 F. Supp. 2d 94, 96 (D.D.C. 2010) (quoting 20 U.S.C. § 1400(d)(1)(A)). "A free appropriate public education entitles 'each child with a disability' to an 'individualized education program' that is tailored to meet his or her unique needs." *Id.* (quoting 20 U.S.C. §§ 1414(d)(1)(A)-(2)(A)).

In the event that parents are dissatisfied with an agency's "identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child," 20 U.S.C. § 1415(b)(6), the IDEA entitles them to present their arguments in an

2

"impartial due process hearing," *see id.* § 1415(f).  Any party that is "aggrieved by the findings and decision" of the hearing officer may bring a civil action in federal court.  *Id.* § 1415(i)(2).

The reviewing court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C); *see* 34 C.F.R. § 300.516(c).  Given the court's authority to hear additional evidence, the "IDEA plainly suggests less deference [to the hearing officer's determination] than is conventional in administrative proceedings."  *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988)) (internal quotation omitted).  Whatever the standard, the party bringing the challenge must "at least take on the burden of persuading the court that the hearing officer was wrong."  *Id*.

**B. Tadzio's Parents Have Standing to Pursue a Claim for Tuition Reimbursement**

The plaintiffs claim that they are entitled to seek reimbursement for expenditures made in support of Tadzio's education.  The District argues that the parents lacked standing to sue once Tadzio turned eighteen.  To resolve the parties' dispute, the court must provide a brief analysis of a parent's rights under the IDEA and the transfer of rights contemplated by 20 U.S.C. § 1415(m).

"[W]hen a public school fails to provide a [free appropriate public education] and a child's parents place the child in an appropriate private school without the school district's consent, a court may require the district to reimburse the parents for the cost of the private education."  *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 232 (2009).  This "commonsense proposition" remedies the problem posed by the potential length of administrative proceedings.  *See Reid*, 401 F.3d at 521; *see Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of*

*Mass.*, 471 U.S. 359 (1985); [2] *see Hudson By and Through Tyree v. Wilson*, 828 F.2d 1059, 1064 (4th Cir. 1987) (noting that parents would otherwise face a "cruel dilemma": they would "either leave the child in an inappropriate classroom pending the long process of review or waive any right to tuition reimbursement for alternative schooling").

This right to compensation is one of the many independent, enforceable rights that parents enjoy under the IDEA. *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 526 (2007). However, the IDEA also allows states to transfer parental rights to a child who reaches the age of adulthood. 20 U.S.C. § 1415(m) (captioned "Transfer of parental rights at age of majority"); *see Winkelman*, 471 U.S. at 528 (noting that a parent's rights may be transferred under this provision). Under this section, a state may provide that "all . . . rights accorded to parents under this subchapter"[3] transfer to the child upon reaching the age of majority. *Id.* § 1415(m)(2). And the District of Columbia has done just that. D.C. MUN. REGS. tit. 5-E 3023.1 (noting that IDEA rights transfer to the child after the child reaches eighteen years of age).

Thus, the District argues that § 1415(m) deprived Tadzio's parents of any standing to pursue any claims now that Tadzio is an adult. But the District's argument suffers from two flaws. First, the rights of Tadzio's parents were violated well before Tadzio reached the age of adulthood. An IDEA violation occurs at the moment that the District fails to provide an appropriate placement for the child. *See G.G. ex rel. Gersten v. District of Columbia*, 2013 WL 620379, at *4 (D.D.C. Feb. 20, 2013) ("[B]ecause the District did not make a timely eligibility determination for G.G., it must reimburse the plaintiffs 'from the date that the eligibility determination should have been made . . . until such time as the student is provided with an

---

[2] The parents "do so at their own financial risk." 471 U.S. at 374.

[3] This subchapter includes the right to a free and appropriate public education. *Brooks v. District of Columbia*, 841 F. Supp. 2d 253, 260 n.4 (D.D.C. 2012)

appropriate placement.'" (quoting *District of Columbia v. Abramson*, 493 F. Supp. 2d 80, 86–87 (D.D.C. 2007))). Here, the parents allege that the District violated their rights by suggesting an inappropriate placement in August 2010. AR 158. At that point, Tadzio was still a minor. Compl. ¶¶ 21–25. And Tadzio's parents paid several months of tuition before Tadzio turned eighteen. AR 236. Thus, Tadzio's parents allege that their IDEA rights were violated well before any transfer of rights might have taken effect.

There is no reason why their right to compensation should evaporate on the child's eighteenth birthday. After all, "[t]he IDEA sets forth stringent procedural safeguards to permit disabled children and their parents to seek redress from [a local education agency] that is currently *or has in the past*, failed to fulfill its statutory responsibilities." *See L.R.L. ex rel. Lomax v. District of Columbia*, 2012 WL 4789532, at *6 (D.D.C. Oct. 9, 2012) (emphasis added). And "district courts have broad power to grant equitable relief, including compensatory relief, to remedy *past failures*." *Id.* (emphasis added). Thus, Tadzio's parents have standing to sue for IDEA violations that occurred before Tadzio's eighteenth birthday. This right does not dissipate simply because Tadzio is an adult. By way of analogy, a child can recover for past violations even if the child is no longer protected by the act. *See Lomax v. District of Columbia*, 2012 WL 4789532, at *6 (noting that an individual who is over 21 may still recover for past IDEA violations); *Brooks v. District of Columbia*, 841 F. Supp. 2d 253 (D.D.C. 2012) (same). Similarly, a parent does not lose the right to recover for past failures simply because of the child's age.

Second, the court is unwilling to endorse an interpretation of the act which might stymie the IDEA's overarching purpose. *See Pihl v. Mass. Dep't of Educ.*, 9 F.3d 184, 189–90 (1st Cir. 1993) ("We cannot believe that Congress, in establishing a disabled student's right to public

education, would allow a school district to suspend the educational rights of such disabled eighteen- or nineteen-year-olds without a remedy."). A familiar canon of statutory construction requires courts to interpret remedial legislation, such as the IDEA, broadly to effectuate its goals and purposes. *See Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967) ("we are guided by the familiar canon of statutory construction that remedial legislation should be construed broadly to effectuate its purposes."). A related rule of statutory construction is that the meaning of a statutory provision is "clarified by the remainder of the statutory scheme," particularly if "only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 217–18 (2001) (quoting *United Sav. Ass'n. of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988)).

As noted earlier, IDEA's primary purpose is to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A); *see Forest Grove*, 557 U.S. at 239; *Burlington*, 471 U.S. at 367. To protect that right, the Supreme Court has recognized a practical necessity: without parental financing, a student's IDEA rights may prove illusory. *Burlington* recognized that parents might need to pay out-of-pocket to vindicate their children's IDEA rights. And it is fair to assume that most—if not all—students have no independent financial means to do so. Thus, if these students were no longer able to rely on their parents' financial assistance, their IDEA rights would exist on paper only. *Burlington*, 471 U.S. at 372 (noting that "if the provision is interpreted to cut off parental rights to reimbursement, the principal purpose of the Act will in many cases be defeated"). And this Circuit has noted that it

would be "manifestly incompatible" with the IDEA's remedial scheme if a child's access to appropriate education could disappear simply because of an inability to "front [the] costs" of an IDEA claim.  *See Reid*, 401 F.3d at 521; *see also Florence County Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 13 (1993) (rejecting an interpretation of the IDEA that would "effectively eliminate the right" to parental reimbursement under *Burlington*); *Upper Freehold Regional Bd. of Educ. v. T.W. ex rel. T.W.*, 2012 WL 3871724, at *8 n.3 (3d Cir. Sept. 7, 2012) (rejecting a construction of the act that would "effectively gut a parent's right to tuition reimbursement").  Under the District's interpretation of the act, Tadzio would be effectively deprived of any feasible opportunity to pursue or protect his rights.  But "[t]he [IDEA] was intended to give handicapped children both an appropriate education and a free one; it should not be interpreted to defeat one or the other of those objectives."  *Burlington*, 471 U.S. at 367.  Accordingly, the court deems that Tadzio's parents have standing to seek reimbursement for Tadzio's full tuition costs, notwithstanding the transfer of rights contemplated by § 1415(m).

This conclusion is the sole method by which the court may avoid the "absurd results" that would flow from the District's reasoning.  *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) (noting that "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available").  The plaintiffs correctly note the perverse consequences that might flow from the District's interpretation of the act.  They argue that their right to reimbursement would suddenly evaporate on their child's eighteenth birthday.  Pl.'s Reply at 3 ("By the time a parent is able to file a due process appeal and receive a decision, the student will likely have turned eighteen and under defendant's argument, the parent will have lost his or her right to reimbursement.").  Without doubt, this would allow the District to insulate itself from liability by dragging its feet.  *See Pihl*,

9 F.3d at 189–90 (noting that courts should eschew a construction of the act that would allow school districts to "rely[] on the Act's time-consuming review process to protect them from further obligations"). In addition, under the District's view, a child could sue for financial harms that he or she never incurred; if successful, the child would receive funds that he or she never earned. Tadzio has already received a free and appropriate education because his parents paid for it. Thus, the District's interpretation of the statute would turn the doctrine of standing on its head. *Cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992) (noting that the "particularized" harm requirement means that "the injury must affect the plaintiff in a personal and individual way"). In addition, it is unclear whether children would be under any obligation to repay their parents. If they were, parents might be forced to sue their own children. Though the court hopes these scenarios would never come to pass, their possibility alone militates against the District's interpretation.

To be clear: at this juncture, the court does not assume that the District violated the plaintiffs' IDEA rights. There is no record below from which the court could draw this conclusion. Accordingly, the court will remand this matter back to the hearing officer to allow the parents to pursue their claim through administrative channels in the first instance. *See Reid*, 401 F.3d at 526 ("[I]n light of the absence of pertinent findings in the administrative record . . . the district court may determine that the 'appropriate' relief is a remand to the hearing officer for further proceedings."); *Wilson v. District of Columbia*, 770 F. Supp. 2d 270, 277 (D.D.C. 2011) (where the administrative record "lacks sufficient information for [the court] to make an informed decision" with respect to an award of compensatory education, "remand or additional fact-finding is necessary") (citations omitted); *Stanton v. District of Columbia*, 680 F. Supp. 2d

201, 208 (D.D.C. 2010) (remand warranted where "the administrative record is 'absent[t] of pertinent findings.'") (citation omitted).

## IV. CONCLUSION

For the aforementioned reasons, the court will grant the plaintiffs' motion for summary judgment, deny the District's cross-motion for summary judgment and remand this matter to the administrative officer for further proceedings consistent with this opinion. An order consistent with this memorandum opinion is separately issued this 5th day of March, 2013.

RUDOLPH CONTRERAS
United States District Judge